## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **LILA JEAN JENKINS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00058 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **RUSSELL COUNTY SCHOOL BOARD** | ) | JUDGE JAMES P. JONES |
| **d/b/a "RUSSELL COUNTY PUBLIC** | ) | |
| **SCHOOLS,"** | ) | |
| | ) | |
| Defendant. | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, and Brittany M. Haddox, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Plaintiff; Jennifer D. Royer, ROYER LAW FIRM, P.C., Roanoke, Virginia, for Defendant.*

The plaintiff, a former public high school principal, claims that she was demoted in retaliation for asserting her rights under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654. The defendant school board has moved for summary judgment in its favor. Because I find that there are issues of material fact in dispute, I will deny summary judgment as to this retaliation claim. However, as to a separate FMLA interference claim, I find that there is insufficient evidence to allow that claim to go forward.

I.

The following facts are taken from the summary judgment record.[1]

The plaintiff, Lila Jean Jenkins, has worked for the defendant Russell County, Virginia, School Board (School Board) for many years.  In 2016 she was appointed by the School Board as the principal of Castlewood High School, one of three high schools in the School Division, and served in that position until June 6, 2019, when she was reassigned to a teaching position by the School Board.  The Superintendent of the Russell County School Division, Gregory A. Brown, recommended this reassignment, which was approved by the School Board on a vote of five to two.

 Complaints about Jenkins from teachers and community members had been received by the Superintendent as well as School Board members.  Brown contends that by May of 2019 he had "lost faith in [her] ability to lead [the high school] as its principal" based on these complaints as well as a survey conducted of the high school teachers and staff.  Mem. Supp. Mot. Summ. J., Ex. 4, Brown Decl. ¶ 2, ECF No. 35-4.  He was also concerned about her failure to promptly investigate the ejection from a state championship athletic event of the high school's wresting coach, who

---

[1]   The parties have submitted declarations, deposition transcripts, and various exhibits thereto.  The Motion for Summary Judgment has been fully briefed and orally argued.  Plaintiff's counsel has moved to strike the defendant's brief in support of the motion because it was electronically filed 23 minutes past midnight on the day following the deadline date, although the motion itself was filed prior to midnight.  Obviously, the plaintiff was not prejudiced by this technically late brief, and I will overrule the motion to strike it.

was her brother.  Brown asked the School Board attorney to assist him in drafting a letter to Jenkins advising her of his decision to seek her reassignment.

In the meantime, Jenkins had surmised that Brown was likely to request her demotion.  On May 1, 2019, she obtained a FMLA certification from a physician supporting her husband's need for her care following back surgery.  On May 10, 2019, Jenkins appeared at Brown's office before he had sent her the planned letter. She contends that the purpose of the visit was to "take [her] family medical leave paperwork there."  *Id.* Ex. 10, Jenkins Dep. 45, ECF No. 35-10.  Brown used the opportunity to discuss his concerns about her performance.  He secretly recorded the conversation, which recording has been transcribed.   At the end of the 30-minute meeting, Brown stated, "[A]fter three years, Lila, I feel that really it's – it's time for a change, for you, for the school.  So with that, I'll be sending you a letter next week to that point . . . . I don't know yet where we'll look at reassigning you.  Okay.  But I mean, that's going to be my recommendation."  *Id.* at 81.  Jenkins replied, "We'll see how that works out for you . . . . I'm going on family medical leave, by the way," *id.* at 82, giving him the FMLA form.

Brown immediately turned the form over to Tammy Gilbert, the staff person who handled FMLA leave requests, and she in turn processed Jenkins' paperwork. Jenkins received all of her requested FMLA leave, including intermittent leave through the end of 2019.  *Id.* Ex. 9, Gilbert Decl., ECF No. 35-9.

The School Board received Superintendent Brown's oral recommendation as to Jenkins' reassignment at its meeting on June 6, 2019. It was discussed in a closed session, as permitted by Virginia law, and voted on in open session thereafter, resulting in the approval of Brown's recommendation.

Jenkins has submitted the declaration of one of the dissenting board members, Charles L. Collins. In his declaration, Collins asserts that during the closed session, the Chairman of the School Board, Don Ramey, stated, "Ms. Jenkins should be removed as Principal because she had taken Family Medical Leave." Pl.'s Br. Opp'n Ex. 13, Collins Decl. ¶ 4, ECF No. 39-13. Collins also alleges that "Dr. Brown concurred." *Id.* Finally, in his declaration, he states that "[a]round this time." he had a telephone conversation with Brown, who said in relation to the decision to demote Jenkins, "Lila did it to herself when she took FMLA." *Id.* at ¶ 7.

The other dissenting board member, Cynthia Compton, states in a declaration submitted by the defendant that she voted against Brown's recommendation because she "needed time to process the information that we had learned" in the closed session and because "[she] was concerned that Ms. Jenkins would sue the School Board because the Board reassigned her while she was on FMLA leave." Mem. Supp. Mot. Summ. J. Ex. 5, Compton Decl. ¶ 16, ECF No. 35-5.

II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

III.

In Count I of the Complaint, the plaintiff asserts that the School Board reassigned her for exercising her rights under the FLMA. The FMLA protects a covered employee from retaliation for exercising rights under the act. 29 U.S.C. § 2615(a)(1), (2); *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 245 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595 (2021). In such a case, in order to survive summary judgment, the plaintiff must (1) produce direct evidence of retaliatory animus or (2) demonstrate intent by circumstantial evidence, which the court evaluates under the

framework established for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Fry*, 964 F.3d at 244.

In the present case, the plaintiff relies on both direct evidence — the Collins declaration — as well as on the *McDonald Douglas* circumstantial evidence framework. Pl.'s Brief Opp'n 14, ECF No. 39. I find that the allegations contained in Collins' declaration are direct evidence, if admissible. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (holding that "[d]irect evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested employment decision" (internal quotation marks and citation omitted)); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 205 (4th Cir. 2016) (holding that "direct evidence must demonstrate that an adverse employment action was actually 'due to . . . FMLA leave as opposed to some other lawful reason'" (quoting *Laing,* 703 F.3d at 718 n.1)).

Nevertheless, the School Board contends that Collins' allegations in his declaration are inadmissible. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact [in summary judgment] cannot be presented in a form that would be admissible in evidence."). The School Board asserts alternative grounds for this position.

First, the School Board argues that the alleged statements are inadmissible hearsay. However, I find that the statements are not hearsay because they are offered

against an opposing party and were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. Rule Evid. 801(d)(2)(D); *Wilkerson v. Columbus Separate Sch. Dist.,* 985 F.2d 815, 818 n.11 (5th Cir. 1993) (holding that discriminatory statement allegedly made by school board member was admissible against school district in summary judgment under Rule 801(d)(2)(D); *Jackson v. Lowndes Cnty. Sch. Dist.*, 126 F. Supp. 3d 772, 781 n.5 (N.D. Miss. 2015) (same as to school district superintendent and board member); *Kitzmiller v. Dover Area Sch. Dist.*, No. 04CV2688, 2005 WL 4147867, at \*2 (M.D. Pa. Sept. 22, 2005) (same as to school board members).

Secondly, it is argued that the statements are irrelevant because Superintendent  Brown did not make the final decision to reassign the plaintiff and Chairman Ramey was only one member of the five-member majority of the School Board who approved Brown's recommendation. However, by state law, a school division's superintendent must provide a recommendation to the school board for employment of a principal or assistant principal, as was done in this case.  Va. Code Ann. § 22.1-293(A).   Evidence of unlawful animus that may have motivated Brown's recommendation is relevant for the jury to consider in determining the actual cause of the plaintiff's demotion.  Evidence of Chairman Ramey's comments and Brown's agreement with those comments during the board's discussion of the demotion is similarly relevant.

Finally, the School Board contends that Collins' declaration allegation of Brown's one-on-one statement to him is inconsistent with Collins' deposition testimony and thus must be disregarded. Collins testified in his deposition that he had talked with Brown prior to the board meeting about reassigning Jenkins as follows:

A. I did not get my much [sic] satisfaction from him, and I asked him, I said, if you are going where you are going, the words I used, and it was not in closed session , ma'am, I said you are going to get egg on your face and there's going to be a problem, and I said, what you need to do is think about this before you recommend it to the Board.

Q. And in that conversation with Dr. Brown, did you  -- did anyone mention FMLA leave?

A. Did anyone mention what, excuse me?

Q. FMLA in that conversation with Dr. Brown?

A. He didn't respond.

Q  All right.

A. He did make a statement to me, and this was not in closed session, it was one on one, that she brought it on herself.  That was the words he said.

Q. And what did you understand that to mean?

A. I didn't really know how to understand it, but I did put this question to him, and this was not in closed session, ma'am; this was one on one.

. . . .

THE WITNESS:   I did ask him – what I asked him, I said, have you sat down with Ms. Jenkins one on one and looked her in the eye and told her what she's doing wrong down at the high school; have you ever done that, and he refused to answer that.  He did not say a word.

Additional Exhibit, Collins Dep. 16–17, ECF No. 36.

I find that the ambiguities in this deposition testimony do not require the court to disregard the witness' declaration.  The defendant will have ample fruitful topics of cross examination of witness Collins at trial, including comparisons of his declaration with his deposition testimony.  In addition, of course, Collins' allegations are flatly denied by the others present.   Nevertheless, these are matters for resolution by the trier of fact, at least in the first instance.[2]

In summary, based on the Collins declaration, I find that here are genuine disputed issues of material fact precluding summary judgment as to the claim of unlawful retaliation.

## IV.

The plaintiff also asserts an interference claim under the FLMA.  She contends that on several occasions, namely in September of 2018, December of 2018, April of 2019, and May 1, 2019, Superintendent Brown knew or should have known that

---

[2]  The School Board also contends that any matters discussed in its closed session are privileged, but I have previously overruled that objection. *Jenkins v. Russell Cnty. Sch. Bd.*, No. 1:20CV00058, 2022 WL 985949, at *2 (W.D. Va. Mar. 30, 2022).

she was entitled to FLMA leave to care for her husband but that he failed to advise her of her rights.  Pl.'s Brief Opp'n 18–19, ECF No. 39.

The FMLA makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). "To state a claim for FMLA interference, the plaintiff must show that (1) he was an eligible employee, (2) the defendant was an FMLA-defined employer, (3) he was entitled to leave under the statute, (4) he gave notice to the employer that he would take FMLA leave, and (5) the defendant denied his FMLA rights." *Trail v. Util. Trailer Mfg. Co.*, No. 1:18CV00037, 2020 WL 104681, at *5 (W.D. Va. Jan. 8, 2020) (citation omitted), *recons. denied,* No. 1:18CV00037, 2020 WL 1862469 (W.D. Va. Apr. 14, 2020), *appeal dismissed,* No. 20-1525, 2020 WL 6479381 (4th Cir. Sept. 4, 2020).

There has been no showing that the plaintiff gave notice to Superintendent Brown (or to any other responsible person employed by the School Board) that she would take FMLA leave until the meeting on May 10, 2019, at the close of which she advised Brown that she planned to take FMLA leave and provided him with the certification from her husband's physician.  Her request was thereafter promptly processed and approved.  Jenkins merely testified that Brown "was aware" of her husband's back problem in September of 2018, Jenkins Dep. 123, ECF No. 35-10, and that she had texted Brown on April 25, 2019, that she was going to be absent

-10-

from work "today" due to her husband's back surgery, to which he had replied, "10-4." *Id.* at 125.

As to the third claimed date of May 1, 2019, that was the day Jenkins' husband's physician faxed to Castlewood High School the completed certification, which Jenkins kept until the meeting of May 10, when she provided it to Brown. There is no evidence that Brown knew of her request for FMLA leave before then.[3]

For these reasons, the Motion for Summary Judgment will be granted as to Count II, the interference claim.[4]

IV.

It is accordingly **ORDERED** as follows:

1. The Motion for Summary Judgment, ECF No. 34, is GRANTED IN PART and DENIED IN PART; and

2. The Motion for Summary Judgment is GRANTED as to Count II and DENIED as to Count I of the Complaint.

---

[3] In the plaintiff's brief in opposition to summary judgment, it was claimed that the physician's certification was faxed on May 1 to "RCSB" (meaning Russell County School Board). Pl.'s Brief Opp'n 19, ECF No. 39. Plaintiff's counsel agreed at oral argument that this allegation is incorrect. The evidence is that it was faxed to the high school where the plaintiff retrieved it.

[4] Count III of the Complaint, asserting a claim under the Americans with Disabilities Act, was earlier dismissed by the court on a Motion to Dismiss by the School Board. *Jenkins v. Russell Cnty. Sch. Bd.*, No. 1:20CV00058, 2021 WL 1414210, at *3 (W.D. Va. Apr. 14, 2021).

ENTER:   May 17, 2022

/s/  JAMES P. JONES_____
Senior United States District Judge